U.S. Embassy in the Philippines  1723.59 It's a strange approach to summary judgment. But I mean, I could see if there were cross motions for summary judgment. But this is the government's motion for summary judgment. Well, the case was on cross motions. But I take your point that the government can't prevail unless we show there's an absence of genuine issue material fact. Right. But we put in the evidence. We showed here's how the IRS calculated this. And they didn't dispute the calculation under them to say we could use income averaging. But they would have to put in evidence to show that income averaging would make a difference, which means they'd have to show the amounts of those prior years. So, yeah, you're saying that there should, in fact, here, the court, court of federal claims said this is obviously a typographical error. Pay up. Forget it. This is not something to litigate. Are we to then accept or perhaps endorse that the service should be benevolent to typographical errors by taxpayers since their own errors are correctable on summary judgment? Well, the critical point here is, as the court found and as the cases I've cited say, is if there's a notice that has a technical error and the taxpayer isn't misled by anything, then it can be deemed corrected. So I think if there was a notion of turning this around and applying it to the IRS. How do we get around the misled issue? That seems to me to be central. Was this taxpayer misled? And Judge Brugge seems to say, no, they couldn't have been misled. Are they arguing at a summary judgment stage that they were misled? Well, the only thing is they can't just say they misled. They've got to say what they were misled about, and all they've really said is this notion of income averaging or that it might be incorrect. Let me just say that it seems to us that there isn't any genuine issue of fact that they weren't misled. But if there was a genuine issue of fact that they were misled. Isn't that based on the 45-49? That's exactly right, which is what the court below relied on. But if you thought that was a factual issue, that shouldn't have been decided on summary judgment. We can still go to the court's second ground for decision, which is you can't get a refund of a tax you pay, even if there wasn't an assessment, as long as you paid it before the statute of limitations expired. Then the court found that under their closing agreement, and there's where the TEFRA provisions come in. That requires the second closing agreement to trump the first. For the timing, correct? Well, our position is that... Is that what I write? I mean, in order to get to that second argument you're making, you have to have the second agreement trump the first agreement? I'd like to phrase it a little differently, because our position is the first one doesn't affect it. Our position is that the first one is the one you look at. I mean, the second one, I'm sorry, the individual closing agreement, for several different reasons. First is that the first closing agreement didn't purport to convert the HABINX partnership items into non-partnership items. All it addressed was the first-level partnership, Wilderness Village, that was a partner in the Lone Wolf McQuaid-Greenberg partnership. Does the shift of the partnership assets automatically affect the HABINX? No. All that does is it makes it on Wilderness Village's return. Now, the items that flowed through to Wilderness Village, those are no longer the partnership items from LVM. Now, they're non-partnership items for Wilderness Village. But there's plenty of case law that says that the individual returns flow from those partnership items. I think that Judge Clevenger is correct. We would have to conclude that the second agreement overrides the first to find that the statute of limitations had not run. Right? Well, no, because you have to look at what the terms of the first one was, because we're not just talking about what's flowing through. We're talking about the specific notion in the statute that says where a partner makes a settlement agreement with the commissioner, that's when the partnership items of the partner are converted to non-partnership items. So what you need is a settlement agreement between the partner, meaning MARLA HABINX. Why don't you just argue that even if we have to show that the second one trumps the first, it does? I mean, isn't that the better argument? Well, it's another argument, so I'll switch to that one. Actually, that is what the court found, because it does say right in it that this agreement supersedes any prior agreement. Was there any prior agreement by anyone? Well, it certainly has to supersede any prior agreement. Any prior agreement between the parties to this agreement, isn't that what that means? Yes, I'm sorry. That is what it says. I'll read it just so we're – it says this agreement supersedes any prior agreement entered into between the taxpayers and the Internal Revenue Service. And they didn't have a prior agreement. Well, our position is that the taxpayers, which is the HABINX, they didn't have a prior agreement. Wilderness Village Partnership had a prior agreement. And why does the prior agreement necessarily state exactly what the tax liabilities are from the HABINX? Well, the prior agreement doesn't. All it does is it says what – it says the taxpayer, meaning Wilderness Village, is entitled to claim its distribution of a partnerless loss. And it says – it also lists the taxpayer's Wilderness Village amount at risk. Well, my point is why is the first agreement relevant at all to the HABINX for purposes of statute limitations? Well, that's our argument is that it's not. And then our secondary argument – Yeah, but if the second agreement comes into play, then hasn't the statute run? Well, no. The key on the statute is if you think the first agreement, the Wilderness Village agreement, is the controlling one that converted the partnership items, then the payment – the key here was the payment before the assessment. We agree that if it's the controlling agreement and the second one doesn't matter, the payment was made more than one year after that. If it's the second one, the individual agreement entered into by the taxpayers in this case, then the payment was made within one year after that. What's the consequences of being made within one year? Well, that the – As opposed to not? That when a taxpayer makes a payment of a tax, even where there's been no assessment, if the payment is made before the time for making the assessment, then he's not entitled to a refund unless he – I mean, then he can argue the merits of the payment. If the payment was made after the time for assessment, then it's an amount that was collected by the IRS after the time for assessment, so it's illegally assessed or collected and is recoverable. It's under Section 6401 of the Interior Law. For example, if we decide in this case that the second agreement is the agreement that we should look at, not the first agreement, because the first agreement was not between the taxpayer and the IRS, the second agreement was – the second agreement says this only amends agreements between me and the taxpayer, and there wasn't a previous one of those. So what are the consequences to this case for decisional purposes if the second agreement is the one that applies? Well, that would mean that their payment in 2000 – I can't remember what month – but that their payment was made within the time for making the assessment. Right, so even if the assessment wasn't made – Even if the assessment wasn't made, which is what would be the result if, for example, if the court held you can't use this typographical error to get around it, or if you held there was some factual issue there, well, this is still a legal question. Okay, even if, for summary judgment, you say the assessment isn't made, then we go to the question of was the correct tax liability paid before the time for making the assessment. Right, but again, then we'd also have to conclude that you don't need an assessment to keep it. Well, because – well, there's plenty of case law that says that,  And you say if the second agreement provides, then the payment was made before the time for assessment? Yes. That cuts in your favor? Let me get the dates on here, just so instead of talking in the abstract. Maybe I'm just wrong, but my understanding was the taxpayer was arguing that the second agreement should prevail, not the first. No, they're arguing the first agreement, because the first one that was earlier in time, because then that will result in an earlier key date. But I don't think there's any dispute that if the second agreement controls, the payment was made within the one year. That's correct, Your Honor. But the taxpayer does dispute whether an assessment has to occur, right? Even though you say there's case law, we've never said that yet. Right? Oh, I think in the – now I can't remember exactly how it came up. I think that probably in some of these cases, at least the court recognized that it didn't need to occur. No, we haven't expressly said that. Well, I think you haven't expressly said it. You didn't cite us any cases. I didn't find any cases. We haven't expressly said that. So it's not a frivolous argument for him to make, because there are some cases going the other way. I concede the bulk of the cases say you don't need an assessment to collect a tax. But there are cases that say the opposite, that assessment has to occur. I think a lot of the cases that say you need one are ones where it's because there was also – because you couldn't make an assessment or collect it unless there was a notice of deficiency. In fact, that was the issue in this court's Bush case, which we mentioned in our statement of the proceedings, that this case was held up pending that because their initial argument was none of these assessments were good because we needed a notice of deficiency of the court. No, because these were computational adjustments, we don't need a notice of deficiency. Okay. Okay, then move on. Thank you, Mr. Ellison. Mr. Redding. Your Honors, I need to clear something up. The question on the closing agreements, the effect of the closing agreement, the statute under TAFRA says that when a partner in the government enter into a closing agreement, that agreement converts partnership items to non-partnership items as of that time. The first agreement did that for all partners in Wilderness Village. It was an agreement that converted the partnership items to non-partnership items. The statute then says that once that conversion takes place, the government has one year in which to make its assessment. It doesn't matter what the contents of the agreement were, even an agreement that there's no change to the partnership items like there was here. That conversion to non-partnership items starts the one year. The second agreement, incidentally. But the second agreement says that it overrides all other agreements, right? It does, but it can't reconvert partnership items to non-partnership items. There's nothing in the law that allows that. Once they're converted, they're converted. You're in a completely different procedural world at that point. Additionally, I'll go on and say that the question about who these are between, Marla Habernick signed both of those closing agreements. She was the partner who signed the closing agreement on behalf of Wilderness Village. But once there's conversion and it becomes a non-partnership item, there still has to be a calculation of amount, right? Yes, ma'am. No question about that. No doubt. But what it does is it gives the government one year to make that calculation and make its computational adjustment. Unless there's an agreement that... Extends the statute. The second agreement could have included an agreement that we're extending the statute of limitations to all prior converted partnership items. Or had there been partnership items that under the first agreement weren't adjusted and were adjusted in the second agreement, that agreement would be the one that converts the partnership items. If there had been partnership items that weren't addressed by the first agreement. Here, you can't go backwards on whether it's a partnership item or not. So, what is the purpose of the second agreement then? The second agreement was a boots and suspenders process at that time, frankly. Whose boots and whose suspenders? Boots and suspenders for both the Hebernecks. We requested that second closing agreement to ensure that we got the effect we wanted of the first agreement. The... Doesn't that cut against you? Pardon? Doesn't that cut against you? I don't think so, your honor. I think the law is what the law is. And... You asked for one that then said it supersedes another agreement that I also signed. As to any of the terms, any of the merits of the agreement, any of the specifics, that would be true. But it still doesn't convert things that were already converted. We could agree in the second agreement to change how those converted partnership items would be treated. But it would not be a partnership item conversion at that time. We might agree to change the way it's treated. But it was converted when the first agreement took place. There is not any case anywhere in our case law that says you can go backwards and make a non-partnership item back into a partnership item. So we can convert it again back to a non-partnership item. There's just nothing in the law that does that. The question though, even beyond that, is why is this relevant? We talk about whether or not the payment was made before the statute of limitations expired. But now we are again throwing out the concept of discrete taxable years. No payment for 1985 was made. There's no payment on the records for 1985. So whether or not the 1985 statute was open is not even relevant to that. The payment that was made was for 1986. We are asking for a 1986 refund. The payment that was made for 1986, whether or not a 1985 unassessed liability could still be assessed would be irrelevant. Yeah, but if you have, the bulk of the case law seems to support the government's position that you don't need an assessment. Your Honor, that is true if you are talking about offsets within the same taxable period. Which is not what we have here. There are no cases that do that where we are talking about a tax liability in one year and a refund claim in another. If that were the case, it would open up every prior taxable year of the taxpayer to be re-examined, re-audited, and new deficiencies asserted by the government that were never assessed in order to offset a year 2000 refund claim that could go back to 1970. That is not our law. Our tax law, with very few exceptions, is established on a discrete taxable year basis. We have discussed that in the brief. We go to where the authority is in the code for that. We have shown that not a single case that the government cites do they cross taxable years on those principles. It just doesn't happen. The issue arises from the concept that for there to be an overpayment, you must have paid more than your tax liability. Whether or not it had been assessed. For that year, this is a refund claim for 1986, not a refund claim for 1985. Had he made the payment as a payment for 1985, had it been posted to the 1985 account, it could not be recovered. I agree. That's not what happened. This is a 1986 payment. It's a 1986 assessment. It is an overpayment for 1986. Are there principles under which the government could try to offset a 1985 liability? I think they might have had a colorable argument had they not waived equitable recoupment. That is a special provision grafted into the code and into the federal common law. But they waived it. For reasons I'm not going to try to argue here, because it was waived, I think we'd have a defense to it. A very good defense to it. But it is the only principle that I know in all my years of practicing tax law that would allow them to do that. To come in and offset an unassessed liability from one year against another year. Or even an assessed liability from one year against another year. The general concept of offset is all within that same discrete taxable year. There are cases where they have penalties that could have been applied to a taxpayer for the same year that were huge. That the government failed to assess. He comes in later with a million dollar plus, as I recall, refund claim for that year. The government comes and says, look, we have these payments. We have these huge penalties. They should have been asserted back five years ago on this same taxable year. And even though the statute of limitations to assess those penalties has now run, we can offset them against your refund claim. And yes, I agree, they can. But that's not what's happening here. What's happening here is the government is trying to jump taxable years. And none of the principles they're relying on apply. Any more questions for Mr. Redd? Any more questions for Mr. Redd? Okay, I think we have the arguments. Thank you, Your Honor. May I make a comment unrelated to the case? Thank you. Thank you both. This is taken under submission. He just asked if he could make a comment unrelated to the case. That's the court's last argument. Oh, okay. I attended a seminar. I will. I attended a seminar just a couple of months ago on the new law that has replaced TEFRA. And you'll be trying TEFRA cases probably for 10 years. But it's been replaced as of 2017. Let me just say that you went from the frying pan to the fire. Oh, geez. This new procedure of the law is insane. It is probably not even constitutional. And I'm getting out. I'm retiring. Why didn't you leave under those circumstances? Because I'm smart enough to do so. Your skills as a litigator. Your Honor, I don't know how you can impose a tax liability. The question I asked at the end of the session, and some of the people on the panel were drafters, were among the drafters of the law. If you have a partnership that gets audited, when the audit is complete, they compute a phantom tax liability based on what the highest tax rate might have been and charge it to the partnership and indirectly to the partners of the partnership. In the year when the audit is concluded. Not the people that were partners in the year that they took the deductions. And if that is challenged to appeals, it defers it on out. The final result is in. It's going to be applied to the partners in that tax year. And if that goes to court, it's going to be 10 years later. How can you impose a tax liability on somebody who had nothing to do? Okay, now you're getting into stuff that might come before us. It is going to come before you. But not by me, Robert.